Commissioners Sinking Fund v. Green and Barren River Navigation Co.

IRA JULIAN FOR APPELLEE.

1. The amendment to the usury law, approved March 2, 1878, did not change or alter the General Statutes nor repeal section 4, which provides for a forfeiture of all interest if usury be contained in the obligation.

2. It is obvious that the notes sued on (bearing ten per cent.) come within the provisions of section 4, because eight per cent. was the legal rate of interest when the notes were executed.

---

CASE 16—EQUITY—OCTOBER 29, 1880.

| 79 | 73 |
| 88 | 10 |
| 79 | 73 |
| 97 | 610 |

# Commissioners of the Sinking Fund v. Green and Barren River Navigation Co.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. The state has the same power to improve its navigable streams as to improve her highways, and when it is necessary to develop the resources of the commonwealth and to facilitate commerce, contracts may be made with individuals or corporations, and, as a consideration for such improvements, the tolls arising from the use of the rivers may be transferred by the state.

2. An exclusive privilege to navigate any stream in the state cannot be granted, but it is competent for the state to authorize the corporation improving it, under a contract with the state, to charge tolls

Commissioners Sinking Fund v. Green and Barren River Navigation Co..

prescribed by the general assembly, reserving the right to all citizens to navigate the stream upon the payment of tolls.

3. The act of 9th March, 1868, entitled "An act to incorporate the Green. and Barren River Navigation Company," approved March 9, 1868,. coupled with the execution of the bond mentioned therein by the appellees, constituted a valid and subsisting contract between the state and the appellees.

4. The act of the general assembly, entitled "An act to repeal in part an act, entitled 'An act to incorporate the Green and Barren River · Navigation Company,'" approved April 5, 1880, is unconstitutional and void.

5. The contract between the state and appellees is not the subject of : repeal by the general assembly.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLANTS.

1. The eminent domain of the state consists of property and rights held ' for the people. The former she may part with, the latter she can. not. Vested rights have reasonable limits and restrictions, and must have some regard for the general welfare and public policy.

2. Appellee is a public corporation, invested with public and police · powers, and therefore the act transferring to it the franchises men-· tioned therein is the subject of repeal. (Cooley on Const. Lim., 523; *Ib.*, 525, 537; Transylvania University v. City of Lexington, 3 . B. Mon., 27; Griffin v. Kentucky Ins. Co., 3 Bush, 594.)

JNO. & J. W. RODMAN FOR APPELLEE.

1. The general assembly had the constitutional power to pass the act of ' March 9, 1868. (12 Conn. Rep., 16; 18 *Ib.*, 501; 14 Howard, 474; 2 Peters U. S., 250; Melnor v. R. R. Co. Dist. New Jersey, Am. Law · Reg., 1857; McReynolds v. Smallhouse, 8 Bush, 447.)

2. The act of March 9, 1868, creates a contract between the state and appellees, under which rights have vested that cannot be destroyed. (Fletcher v. Peck, 6 Cranch, 87, 156; Dartmouth College v. Wood-·· ward, 4 Wheat., 641; 9 Cranch, 52; 8 Wheat., 1; 2 Haywood's N. C. Rep., 310; 2 McChord, 354; Keith v. Hamilton, 5 Bush, 458; Walker v. Gregory, 2 Met., 598; 8 Bush, 447; Baldwin v. Commissioners Sinking Fund, 11 Bush.)

3. Appellees are a private corporation. (Potter on Corporations, 26; . Angell & Ames on Corporations, sec. 31.)

4. Appellees could have no counter-claim against appellants. (Commonwealth v. Todd, 9 Bush, 708.)

W. LINDSAY FOR APPELLEE.

1. This court, in McReynolds v. Smallhouse (8 Bush, 447), decided that the legislature could constitutionally part with the possession and control of Green and Barren rivers; and in the Kentucky River ·

Navigation Co. v. The Commonwealth (12 Bush, 8), it is held that a line of navigation, similar in every respect to that on Green and Barren rivers, is the legitimate subject of lease. In a case between, the same parties (13 Bush), the validity of the lease was conceded by both sides.

2. A public corporation is a part of the government, created for the purpose of aiding and sustaining the laws indispensable to government. This is a mere private corporation. (Murphy v. Louisville, 9 Bush,. 196; Louisville v. The Commonwealth, 1 Duv., 297; 4 Wheat., 629.),

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The Green and Barren River Navigation Company was incorporated by an act of the legislature passed on the 9th of March, 1868; and by an express provision of its charter leased from the state for the period of thirty years the Green and Barren river line of navigation, and by the second and third sections of the act there was transferred to the company all the rights, franchises, &c., pertaining to this line of navigation, and the possession delivered in consideration that the company would maintain and keep the line in repair, and permit all boats, crafts, and other vessels to navigate the two rivers according to certain specified rates prescribed as tolls, which shall inure to the company. A bond in the penal sum of five hundred thousand dollars was executed by the company with surety, and approved by the Governor, for the performance of the duties and obligations imposed under the contract between it and the state. The state had constructed locks and dams on Green river, necessitating a large expenditure of money, and in the preamble to the act incorporating the present appellee (the Green and Barren River Navigation Company) recited the fact "that the line of navigation had always been a charge upon the State, and was then largely in debt and without prospect of any better condition; and as it was of importance to the country to keep the working line in order, and to avoid

expense to the state, the same is leased and conveyed to this incorporated company," &c.

The appellee took possession of the improvements on these rivers under the lease from the state, and continued in the undisturbed enjoyment of the franchise until the 5th of April, 1880, when the legislature of the state passed an act, entitled "An act to repeal in part an act, entitled 'An act to incorporate the Green and Barren River Navigation Company,'" &c. The first section of this repealing act is to amend so much of the original act of incorporation, passed on the 9th of March, 1868, "as leased and conveyed to the appellee and its successors the Green and Barren river line of navigation, and their tributaries, together with the grounds, houses, water-works, water-power, &c.; and so much of said act as gave to the company the tolls and revenues arising or to arise from said line of navigation." The Commissioners of the Sinking Fund were authorized to take possession of the same by the first of January, 1880, or as soon thereafter as practicable, by agents appointed for that purpose. The company, on a demand made by the Sinking Fund Commissioners of the possession, refusing to deliver it, the present action was instituted to recover the property. The company answered, setting forth the lease of the 9th of March, 1868, the use and possession of the franchise and property from that time until the institution of the action, a period of near twelve years; that it had performed all the conditions of its covenant to the state, and faithfully discharged all the duties and requirements of its act of incorporation, and has permitted all boats, vessels, &c., to navigate the rivers, at all times, upon the terms prescribed by the charter and lease made by the state; that they had expended large sums of money, and were ready, willing, and

then performing their part of the contract, and denied the power of the legislature to annul at its pleasure the agreement between it and the state.  A demurrer was filed to the answer, and overruled, and the Commonwealth electing to stand by the demurrer, has brought the case to this court. The appellee maintains that the repealing act of the 8th of April, 1880, is unconstitutional, and this is the sole question in the case.

That both of the rivers, Green and Barren, are navigable streams, and were used by the public for all the purposes of trade and navigation at the time the contract was entered into between the state and the appellee, and that the state had expended large sums of money in constructing the locks and dams on Green river, so as to extend the line of navigation, are facts conceded by the parties, and the rights and powers of the state government over the two navigable streams must determine the propriety of the judgment below.

It is insisted by the attorney for the state that a navigable stream is that character of public property in which every citizen has a private interest or right of property of which he cannot be deprived by any legislative action.  The right of the state to make the improvements so as to increase the trade and commerce on these streams, and develop the resources of that part of the state is not questioned, with the additional right to regulate and prescribe the rate of ·toll the citizen must pay in navigating either river; but, at the same time, it is urged that this right to improve the rivers, or the right to keep the improvements in repair after they are made, when granted to others, is such a disposition of the private rights of the citizen in this public property as is inhibited by the constitution.

It may be conceded that the legislature has no more right
to exclude the citizen from the use of these great natural
highways than to deny him the right to travel on any of the
ordinary highways of the State, as no such power has, we
think, been attempted to be exercised in the case being
considered. The state, in making the improvements, had
expended large sums of money, and finding it necessary to
make annual appropriations for keeping the improvements
in repair, thought it best for the interests of the state to
lease this line of navigation to the appellee, in consideration
that it would make the expenditures for repairs, reserving
the right of all persons to navigate these rivers upon the
payment of certain tolls at the time regulated and fixed by
the legislature. Tolls were being collected by the state
when this lease was made, and why the representatives of
the people, who are presumed to look to the interests of
their constituency and that of the state, could not rid the
state of the burden by permitting others to assume it, we
cannot well see. Justice Cooley says that the "general
right to control and regulate the public use of navigable
rivers is unquestionably in the state;" and it does not follow
because the right to navigate our public rivers is common to
all, that the manner of its use cannot be controlled and
regulated by the state government. The state has the same
power to improve its navigable streams that it has any of
its highways; and when it becomes necessary to extend the
line of navigation for the purpose of developing the re-
sources of the state, or to facilitate trade and commerce,
the state may contract with individuals or corporations for
the construction of such improvements, and as a considera-
tion therefor, transfer to them the tolls arising from its navi-
gation. It is not pretended by any pleading in this cause

that an exclusive privilege has been granted the appellee to navigate the two rivers; for if such was the case, it might then fall within the constitutional inhibition; but, on the contrary, the state has prescribed the rate of toll as a part consideration for the undertaking, and reserved to its citizens the right to navigate both rivers upon the payment of tolls.

These streams constitute a part of the territory of the state, and while it is conceded the state may turnpike its highways, or authorize others to do so, and collect tolls from the citizen, it is urged that it has no power to place its rivers under the control of others in consideration of improvements made, although the public interest, of which the legislature must be the judge, demands it.

The eminent domain pertaining to every sovereignty is not surrendered by this legislative action. When the public necessity demands that a right of way should be established, and the owner refuses to surrender the use, upon being compensated in damages, his private rights must yield to the necessities of the public, while this right of eminent domain, when applied, says Justice Cooley, to navigation in seas, lakes, public rivers, &c., is complete without any such action on the part of the state, and to that extent differs from the common highway established over the land of the owner with or without his consent.

When the property of the citizen is taken in the exercise of this sovereign power, the legislature may confer on a corporation the right to charge tolls in consideration of its being placed in a condition for public use; but when the state is already in possession of its navigable waters, and no condemnation is requisite or compensation required, it is attempted to be maintained that no such power can be exercised, and our navigable rivers are to remain unimproved,

or the improvements already made permitted to decay for the reason that the State is unwilling to burden the citizen with taxation for that purpose, and is denied the power to permit the improvement to be made by others, for no other reason than that the law of nature has already appropriated them to public use.

The fallacy of this reasoning, if followed, would prevent the state from placing a dam in the river that might tend to prevent its free use by the citizen who was unable to pay the toll. The question involved in this case was, in effect, decided by this court in the case of McReynolds v. Smallhouse, reported in 8th Bush, in which the appellant, who refused to pay toll when navigating these rivers, insisted that the contract between the state and the present appellee was in violation of both the state and federal constitutions. It was held in that case that the act was constitutional, the only difference in the two cases being that the Commonwealth is now the party appellant, and is endeavoring to sustain the legislative repeal of so much of appellee's charter as evidences the existence of the lease, for the want of power in the legislature to make it.

In the two cases of the Kentucky River Navigation Company against the Commonwealth, reported in 12th and 13th Bush, where the state had leased the Kentucky river to a company for a period of forty years, the Commissioners of the Sinking Fund sought to cancel the lease upon the ground of a failure on the part of the company to comply with its contract, by reason of its insolvency and for other causes. On the final hearing, the lease was canceled, and the possession of the river, locks, dams, &c., restored to the state. The constitutional question, it is true, was not raised in either case; but the court, as well as the counsel repre-

senting the state, evidently regarded such an exercise of legislative power as authorized by the constitution; otherwise the question would at least have been considered.

The act of incorporation in the present case, embodying the terms of the contract, was granted in consideration that the company would keep the line of navigation in repair for twenty years, and to secure its performance a bond, with surety in the penalty of five hundred thousand dollars, was executed to and accepted by the State. It entered upon the improvements, and, so far as this record shows, has complied with every stipulation required to be performed on its part, and without any other reason than the alleged power of the legislature to disregard such contracts at its will and pleasure, the company is called on to surrender its control over these improvements and the benefits resulting from the lease, without any compensation whatever. The repeal of this part of the company's charter cannot be held to have divested it of any of its rights, or impair the validity of the contract under which these rights are asserted.

The right of the state to resume the control of these improvements, when public necessity demands it, on the payment of a just compensation to the appellee, is unquestioned; in other words, the right of the state to take private property, or rights in property, acquired under a legislative enactment of whatever kind for public use, upon compensation being made, cannot be doubted, nor can one legislature bind a succeeding one, by contract or otherwise, so as to prevent the exercise of this sovereign power. In this position we concur with counsel, but cannot assent to a doctrine that will allow the state to alter or abolish such contracts whenever, in the opinion of the legislature,

the necessities of the public or the interests of the State require it.

The argument of counsel would have much weight if, by the terms of the contract, the right to navigate these rivers belonged exclusively to the appellee; but the mere incidental advantages this company may have over others, in running its boats free of toll, is not such an exclusive privilege as creates a monopoly or violates any provision of the constitution.   It pays a fair equivalent for this privilege in the expenditures for repairs, to which others navigating these streams with their boats cannot be subjected.   Case after case might be cited to show that such grants are not liable to any constitutional objection—some of the cases going so far as to determine that the state might not only obstruct, but close up such streams, when not restricted by the federal constitution.   (Raily v. Railroad Company, 4 Harrington; Neage v. Moon, 14th Howard.)   While this court is not disposed to concede the power to such an unlimited extent, the right of the legislature to give to the appellee such control over this line of navigation as it claims under its charter, cannot be successfully questioned; and, in our opinion, both the state and federal constitutions present insuperable barriers to the recovery in this case.

The appellee is strictly a private corporation, vested with other rights and privileges, by reason of its charter, and the only duty it owes to the state or the public is a faithful performance of the contract between it and the state.   There is no question before us as to the character and extent of the control the state may have over the appellee or its navigable waters so long as this contract remains in force, nor is there any breach of the obligation assigned or claimed to exist as against the company, and none could

have been assigned under the repealing act being considered. The only question is: Had the legislature the power to annul the contract? We think not, and must adjudge that the act of the 8th of April, 1880, is unconstitutional and void. The charter of the appellee has not been repealed, but only so much of it as relates to the lease; and if there had been a repeal of the charter by reason of the statute of 1856, the provision of the first section of that act, "that whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested," would secure to the appellee its right under the lease. The right of the appellee to the tolls and benefits of this line of navigation originated from the contract made with the state, and any legislation impairing its obligations, without the consent of the appellee, is a violation of the constitution.

Judgment affirmed.   (Kellogg v. Union Company, 12 Conn. ; Thames Bank v. Lovell, 18 Conn.)

Judge HINES not sitting.